**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

U-Bake Rochester, LLC, Charles A. Baker, and Dianna L. Baker,

Plaintiffs,

v.

Todd Utecht and Utecht Bakeries, LLC,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 12-1738 ADM/SER

---

Jerrie M. Hayes, Esq., and James A. Godwin, Esq., Wendland Utz, Ltd., Rochester, MN, on behalf of Plaintiffs.

James J. Long, Esq., and Erin O. Dungan, Esq., Briggs and Morgan, P.A., Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On November 21, 2013, the undersigned United States District Judge heard oral argument on Defendants Todd Utecht ("Utecht") and Utecht Bakeries, LLC ("Utecht Bakeries") Motion for Summary Judgment [Docket No. 11] and Plaintiffs U-Bake Rochester, LLC ("U-Bake Rochester"), Charles A. Baker, and Dianna L. Baker's Motion for Summary Judgment [Docket No. 16]. For the reasons set forth below, Defendants' Motion is granted and Plaintiffs' Motion is denied.

## II. BACKGROUND[1]

This action arises out of a Trademark License Agreement ("TLA") between U-Bake Rochester and Utecht Bakeries. Plaintiffs contend that although the TLA is labeled as a license

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties have moved for summary judgment, any disputed facts are noted.

agreement, it meets the statutory definition of a franchise under the Minnesota Franchise Act ("MFA") and the Wisconsin Franchise Investment Law ("WFIL"). Plaintiffs allege Defendants violated these statutes by failing to register as a franchise, failing to comply with the statutory disclosure requirements, and misrepresenting the start-up costs, potential sales, and profits involved in the opening and operation of a U-Bake store. Compl. [Docket No. 1] ¶¶ 45-73. Plaintiffs also assert claims for common law fraud and negligent misrepresentation. Id. ¶¶ 81-95.

Plaintiffs Charles and Dianna Baker are married and own Plaintiff U-Bake Rochester, a Minnesota entity. Affidavit of James J. Long, Oct. 10, 2013 [Docket No. 14] ("Long Aff.") Ex. A ("Charles Baker Dep.") at 22:4-6; Ex. C ("Dianna Baker Dep.") at 12:13-15. Defendant Todd Utecht is vice president and general manager of Utecht Bakeries, a Wisconsin entity that operates a frozen dough and bulk foods store in Wausau, Wisconsin. Id. Ex. E ("Utecht Dep.") at 12:20-22; 13:1-4. Utecht Bakeries owns the U-BAKE trademark. Id. at 13:5-9; 18:22–19-2. Utecht Bakeries has entered into several trademark license agreements granting the right to use the U-BAKE trademark with stores located mostly in Wisconsin. Id. at 46:24–47:6; 133:16-19.

In early 2009, the Bakers, then residents of Rochester, Minnesota, began searching for a business opportunity to supplement their income and retirement. Charles Baker Dep. at 53:18–54:10. At that time, Charles Baker worked approximately 80 hours per week as a pharmaceutical salesperson, and Dianna Baker worked as a pre-kindergarten screener for the Rochester Public Schools. Id. at 18:4-15; 19:10-23; Dianna Baker Dep. at 11:16–12:12. Using the internet, the Bakers investigated food-related franchises such as fast food chains and coffee shops but decided the initial franchise investment was too expensive. Charles Baker Dep. at

55:11–58:16. Through their research, the Bakers learned that franchisors are generally required to provide prospective franchisees with a financial disclosure document ("FDD"). Id. at 59:16–60:8.

The Bakers became aware of U-BAKE products through their daughter, who lived near a U-BAKE licensed store in Savage, Minnesota. Id. at 60:19-61:5; Dianna Baker Dep. at 21:3-13. The Bakers visited the Savage store and spoke with its owners several times before contacting Utecht to discuss the possibility of selling U-BAKE products. Charles Baker Dep. at 73:21–74:2. The Bakers made the initial contact with Utecht; Utecht did not approach or solicit the Bakers. See Dianna Baker Dep. at 21:11-22.

On December 29, 2009, the Bakers met with Utecht at the Utecht Bakeries' Wausau, Wisconsin store. Id. at 21:19-24. Utecht informed the Bakers they would be buying permission to use the U-BAKE trademark and that the opportunity "was not a franchise." Charles Baker Dep. at 138:18–139:1. Charles Baker's handwritten notes from the meeting recorded, "buying trademark not a franchise." Id. at 141:2-13 (emphasis in original); Long Aff. Ex. G. Utecht also encouraged the Bakers to visit and meet the owners of the U-BAKE store in La Crosse, Wisconsin, and to have further discussions with the Savage, Minnesota, store owner before making the decision to go forward with the business opportunity. Charles Baker Dep. at 65:20–66:16. The Bakers made several trips to the La Crosse store and spoke with the owners by phone approximately a dozen times. Id. at 70:1-13.

Approximately one week after the Bakers' first meeting with Utecht, Charles Baker sent a January 5, 2010 email to Utecht stating that John Hicks, their banker at Wells Fargo who was working on their Small Business Association ("SBA") loan, had requested a copy of the

franchise agreement and FDD. Id. at 146:14–147:2. Utecht responded that there was no FDD. Id. at 147:3-6.

In January or February of 2010, Charles Baker prepared an extensive business plan for U-Bake Rochester (the "Business Plan") that the Bakers presented to the SBA for their SBA loan. Id. at 78:1-14; Long Aff. Ex. H. The Business Plan touted the benefits of not being a franchise, explaining:

> Not being a franchise, you have the option of partnering with other specialty products or taking a different focus to increase sales at your discretion. You are not limited by a franchise agreement with what has to be on the shelf.

Long Aff. Ex. H, at 10. The Business Plan also projected start up costs of $205,000, increased sales of 30% from year one to year two, and increased sales of 17% from year two to year three. Charles Baker Dep. at 132:25–134:6; 137:10–138:12. Charles Baker stated the accuracy of the information in the Business Plan "was important because it was what we used to try to make a decision whether or not to go forward." Id. at 81:10-15.

Prior to the parties' execution of the TLA, Utecht provided the Bakers with a draft of the agreement. Id. at 144:3-7. The Bakers gave the draft to their attorney, who is a partner in the firm that serves as Plaintiffs' counsel of record in this case. Id. at 105:20–106:8. The attorney reviewed the draft, suggested changes, and made revisions. Id. at 30:6-19; 106:16–107:11. All of the suggested changes and revisions were incorporated into the final version of the TLA, which the attorney then recommended the Plaintiffs sign. Id. at 107:20-25.

The parties executed the TLA in early May 2010. See Long Aff. Ex. F ("TLA"). The TLA provides that Utecht Bakeries will grant U-Bake Rochester a license to use the U-BAKE trademark, and requires U-Bake Rochester to pay Utecht Bakeries an initial license fee of

$30,000 and 2.5% of its monthly gross receipts. Id. ¶¶ 1, 2. The TLA further provides in relevant part:

> 2. UTECHT BAKERIES[,] L.L.C. will assist and advise LICENSEE [U-Bake Rochester] with the setup and arrangement of licenses, on the inventory ordering process, bookkeeping procedures of the STORE level, and introduce LICENSEE to the appropriate suppliers of inventory.
>
> 3. An employee of UTECHT BAKERIES, L.L.C. will be on the premises and licensed during normal business hours for a period of time not to exceed two (2) weeks. The first week being one week immediately prior to the STORE opening and the second week being the first week the STORE is open for business. Employees of UTECHT BAKERIES, L.L.C. will be on the premises to assist with the day-to-day operations of the STORE including the training of employees licensed in the operation of the STORE, and to include instructions in the process of baking merchandise offered for sale.
> . . .
>
> 9. It is understood and agreed by the parties hereto that UTECHT will not exercise any control over Licensee's Method of Operation, Business Organization, Promotional Activities, Management, Marketing Plan or Business Affairs, and that UTECHT has not and will not furnish assistance to LICENSEE in areas relating to Licensee's Method of Operation, Business Organization, Promotional Activities, Management, Marketing Plan or Business Affairs.
> . . .
>
> 10. LICENSEE acknowledges that UTECHT is not its partner, joint venture or franchiser, and that the relationship between LICENSEE and UTECHT is not a franchise relationship but is that of LICENSEE and LICENSOR, and that LICENSEE is not required to follow any specific merchandizing plan set forth by UTECHT or anyone associated with UTECHT.
>
> 11. It is understood and agreed by the parties hereto that UTECHT has made NO claims about actual or potential earnings.
>
> 12. It is understood and agreed by the parties hereto that no oral agreements of any kind have been made and that this agreement supersedes all prior representations and constitutes the entire understanding and agreement between the LICENSEE and UTECHT,

and may be modified only in writing.

Id. ¶¶ 2-3, 9-12 (underlining in original).

Plaintiffs opened the U-Bake Rochester store in September 2010. See Long Aff. Ex. I. The store grossed over $415,000 in its first fiscal year. Charles Baker Dep. at 134:18-22. During 2011, sales declined sharply, and the store was not profitable. Dianna Baker Dep. at 62:6-11. The Bakers "were having to put money in to keep the doors open." Id. at 62:13-14.

In March of 2012, after the Bakers' store had been operating for 18 months, Utecht informed Charles Baker that the Savage, Minnesota, location had filed a lawsuit against Utecht Bakeries. Charles Baker Dep. at 148:2-5. The lawsuit alleged, among other things, violations of the MFA and the WFIL for failure to register as a franchise and for alleged misrepresentations relating to the sale of a franchise. See Long Aff. Ex. L.[2] Upon receiving this information, Charles Baker "had a meeting immediately" with the same attorney who had reviewed, revised, and advised them to sign the TLA. Dianna Baker Dep. at 64:17-19. On April 2, 2012, the attorney sent Utecht a letter stating, "your arrangement with our client undoubtedly constitutes a franchise under Minnesota law." Long Aff. Ex. J.

Plaintiffs filed this action on July 19, 2012. They allege the TLA meets the statutory definition of a franchise under the MFA and the WFIL, and that Defendants have violated the statutory registration and disclosure requirements (Counts I and III) and made false statements concerning U-Bake Rochester's start up costs, potential sales, and prospective profits (Counts II and IV). Plaintiffs further allege Defendants are liable for common law fraud and negligent

[2] The franchise claims in the lawsuit filed by the Savage, Minnesota, store owners were later dismissed based on the statute of limitations. See id. at 1, 8.

misrepresentation (Counts VI and VII) based on the alleged misrepresentations about start up costs, potential sales, and prospective profits.[3] Plaintiffs seek recission of the TLA, damages of approximately $250,000, and attorneys' fees and costs.

Defendants argue Plaintiffs are equitably estopped from claiming Defendants violated the registration and disclosure provisions of the MFA and WFIL. Defendants further argue no misrepresentations were made in connection with the sale of the trademark license, and that even if misrepresentations were made, Plaintiffs did not reasonably rely on them.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c)).[4] On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, giving the nonmovant the "benefit of all reasonable inferences to be drawn from the facts." Schrader v. Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1013 (8th Cir. 1991) (quoting Woodsmith Pub. Co. v. Meredith Corp., 904 F.2d 1244, 1247 (8th Cir. 1990)). The nonmoving party, however, may not "rest on mere allegations or denials, but must demonstrate on the record the

---

[3] The Complaint also alleges a claim under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68 ("MCFA"). See Compl. ¶¶ 74-80 (Count V). However, Plaintiffs did not address the MCFA claim in their briefs and conceded at oral argument that the claim is not viable and should be dismissed.

[4] The summary judgment standard was previously located in Rule 56(c).

existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Analysis**

**1. Alleged Violations of Franchise Statutes**

Plaintiffs allege the TLA was a franchise as defined by the Minnesota and Wisconsin franchise statutes. The definitions of a franchise under the MFA and the WFIL are similar. Both define a franchise as a contract or agreement that includes three essential elements, two of which are: (1) the franchisee is granted the right to use a franchisor's commercial symbol or trademark; and (2) the franchisee pays, directly or indirectly, a franchise fee. See Minn. Stat. § 80C.01, subd. 4(a)(i),(iii); Wis. Stat. § 553.03(4)(a). The third element of a franchise under the MFA is that the "franchisor and franchisee have a community of interest in the marketing of goods or services." Minn. Stat. § 80C.01, subd. 4(a)(ii). The third element of a franchise under the WFIL is that the franchisee is granted the right to offer, sell, or distribute goods or services "under a marketing plan or system prescribed or suggested in substantial part by a franchisor." Wis. Stat. § 553.03(4)(a)(1). Assuming without deciding that the TLA meets the definition of a franchise under the MFA and the WFIL, Plaintiffs' claims under these franchise statutes nevertheless fail because Plaintiffs are estopped from claiming Defendants violated the statutes' registration and financial disclosure requirements, and because Plaintiffs did not rely on Defendants' alleged misrepresentations.

**a. Failure to Register and Disclose (Counts I and III)**

Plaintiffs allege Defendants failed to register as a franchisor and to provide Defendants with the requisite financial disclosures under §§ 80C.02 and 80C.06 of the MFA (Count I) and

§§ 553.21 and 553.27 of the WFIL (Count III). Under these provisions, one who offers to sell a franchise must file an effective registration with the state and provide potential franchisees with a public offering statement or offering circular. Minn. Stat. § 80C.02 (registration requirement), Minn. Stat. § 80C.06, subd. 5 (public offering requirement); Wis. Stat. § 553.21 (registration requirement), Wis. Stat. § 553.27(4) (offering circular requirement). There is no dispute that Defendants did not register as a franchisor and did not provide Plaintiffs with a public offering statement or offering circular.

Defendants argue Plaintiffs are equitably estopped from asserting the registration and disclosure provisions have been violated. "Equitable estoppel prevents the assertion of otherwise valid rights where one has acted in such a way as to induce another party to detrimentally rely on those actions." Drake v. Reile's Transfer & Delivery, Inc., 613 N.W.2d 428, 434 (Minn. Ct. App. 2000).

Plaintiffs contend the defense of equitable estoppel is precluded by anti-waiver clauses in the MFA and WFIL. Those clauses prevent parties from contractually agreeing to waive compliance with any of the franchise statute's provisions. See Minn. Stat. § 80C.21; Wis. Stat. § 553.76. However, Defendants' defense is one of estoppel, not contractual waiver, as Defendants argue Plaintiffs engaged in conduct that estops them from now claiming violations of the MFA and WFIL. See Milas v. Labor Ass'n of Wis., Inc., 571 N.W.2d 656, 660 (Wis. 1997) ("The estoppel doctrine . . . focuses on the conduct of the parties."). Minnesota and Wisconsin law both provide that equitable estoppel may apply to prevent a franchisee from obtaining recission of a franchise agreement based on technical violations of Minnesota and Wisconsin's franchise statutes. See Clapp v. Peterson, 327 N.W.2d 585, 587 (Minn. 1982) (applying equitable estoppel

to avoid inequitable result in action for recission based on alleged registration and disclosure violations of the MFA); Dr. Performance of Minn., Inc. v. Dr. Performance Mgmt., L.L.C., No. Civ. 01-1524 (DSD/SRN), 2002 WL 31628440, at *6 (D. Minn. Nov. 12, 2002) ("Both state and federal courts applying Minnesota law have held that franchisees seeking recission and restitution under the MFA must first overcome any equitable defenses to recission."); Sterling Vision DKM, Inc. v. Gordon, 976 F. Supp. 1194, 1200 (E.D. Wis. 1997) (analyzing equitable defenses of waiver and estoppel to claim for failure to register under WFIL). Therefore, Defendants are not precluded from asserting the defense of equitable estoppel.

The elements for equitable estoppel are very similar under Minnesota and Wisconsin law. Minnesota law requires a party to prove: (1) promises or inducements were made; (2) the party reasonably relied upon the promises; and (3) the party "will be harmed if estoppel is not applied." Pollard v. Southdale Gardens of Edina Condo. Ass'n, Inc., 698 N.W.2d 449, 454 (Minn. Ct. App. 2005) (citing Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990)). Wisconsin law requires a party to show: (1) a person with "knowledge of the true facts" made a misleading communication to another through "words, conduct or silence;" (2) the other relied on the communication; and (3) the other would be materially harmed if the party were "later permitted to assert any claim inconsistent with his earlier conduct." Sterling Vision, 976 F. Supp. at 1200.

Here, the words, conduct, and silence of Plaintiffs and their attorney equitably estop Plaintiffs from now asserting violations of the MFA and WFIL's registration and disclosure requirements. Plaintiffs' attorney contributed to the drafting of the TLA by suggesting changes and drafting revisions, all of which were incorporated into the final version of the business

arrangement set forth in the TLA. The same attorney expressed his knowledge of the type of business arrangement that constitutes a franchise. See Long Aff. Ex. J (letter from Plaintiffs' attorney stating U-Bake Rochester's arrangement with Defendants "undoubtedly constitutes a franchise").[5] This knowledge is imputed to Plaintiffs. See, e.g., Benson v. Sbarro Licensing, Inc., Bus. Franchise Guide (CCH) ¶ 7967 (Minn. 2d Jud. Dist. 1983) (stating plaintiff's attorney's "knowledge of the illegality of the sale of the franchise and the right to exercise the remedy of recission . . . is imputed to the plaintiffs"). Thus, Plaintiffs, through their attorney, were aware of the type of business arrangement that constitutes a franchise.

The same characteristics of the business relationship which Plaintiffs now argue show the existence of a franchise were largely present when the terms of the TLA were reviewed, revised, and approved by Plaintiffs' attorney. For example, the TLA agreement grants Plaintiffs the right to use the U-BAKE trademark, requires Plaintiffs to pay an initial fee and monthly royalty fees, and obligates Defendants to assist with store set up, inventory ordering process, bookkeeping procedures and supplier introductions. See TLA ¶¶ 1-3. During the process of reviewing and revising the TLA, Plaintiffs remained silent as to any assertion that these terms created a franchise. Plaintiffs also left intact the provision in the TLA that expressly states the business relationship is not a franchise relationship. See id. ¶ 10. Additionally, Plaintiffs knew at the

---

[5] There is no basis to dispute that Plaintiffs' attorney possessed this knowledge at the time he reviewed, changed, and recommended execution of the TLA in 2010. When Plaintiffs' attorney was asked what he had done and thought in connection with the draft and revisions of the TLA, he refused to answer based upon Plaintiffs' assertion of the attorney-client privilege. See Long Aff. Ex. D at 7:2-13 (stating Plaintiffs were unwilling to waive attorney-client privilege); 15:25–19:8 (refusing to answer on basis of attorney-client privilege); 23:11-13 (same); 28:2-19 (same); 33:13–34:8 (same). Thus, the only evidence of record is that Plaintiffs' attorney knew at the time the TLA was negotiated and executed that the existence of a franchise is determined by the examining the characteristics of the parties' business arrangement.

time they executed the TLA that they had not been provided with an FDD, as Utecht told Charles Baker an FDD did not exist.

In addition to their passive conduct representing they understood the business arrangement was not a franchise, Plaintiffs engaged in affirmative conduct consistent with this position. For example, Plaintiffs prepared a Business Plan that expressly stated the business was not a franchise. Plaintiffs touted the non-franchise relationship as a benefit when seeking a loan from the SBA. Thus, Plaintiffs represented through words, silence, and conduct that their business arrangement with Defendants was not a franchise. In turn, Defendants entered into the TLA without registering as a franchisor and without providing Plaintiffs with an FDD.

After Plaintiffs had been operating under the U-BAKE trademark for 18 months, the same attorney who had assisted with the drafting and approval of the TLA made an about-face and asserted the arrangement "undoubtedly constitutes a franchise under Minnesota law." Long Aff. Ex. J. Plaintiffs then hired the attorney's law firm to file this lawsuit alleging inter alia that the TLA created a franchise and that Defendants were required to register as a franchisor and provide Plaintiffs with an FDD. Plaintiffs seeks recission of the TLA as well as $250,000 in damages and their attorneys' fees and costs in bringing this action. Defendants will be materially harmed if Plaintiffs are now allowed to assert claims that are entirely inconsistent with their earlier representations and conduct.

Applying estoppel under the unique circumstances here does not defeat the purpose of the franchise statutes, which are meant to "protect potential franchisees . . . from unfair contracts and other prevalent and previously unregulated abuses in a growing franchise industry." Martin Investors, Inc. v. Vander Bie, 269 N.W.2d 868, 872 (Minn. 1978). This is not a fact pattern

where a putative franchisee was lured into purchasing a franchise and duped into relinquishing unknown rights. Plaintiffs sought out Utecht to pursue this business opportunity. The TLA was the product of an informed and deliberate negotiation process, as evidenced by Plaintiffs' attorney's active involvement in revising the terms of the TLA and his knowledge that the existence of a franchise is determined by the characteristics of a business relationship.

Significantly, Plaintiffs affirmatively adopted the no-franchise position when it inured to their benefit, such as when they were seeking an SBA loan for their business. They maintained this position throughout their first year of operations, when sales exceeded the figures projected in their Business Plan. It was not until sales declined and Plaintiffs learned of the Savage store's allegations that Plaintiffs' attorney—the same individual who revised and approved the TLA expressly stating the relationship was not a franchise—took a completely opposite stance and claimed the terms of the negotiated business arrangement "undoubtedly" constituted a franchise. Allowing Plaintiffs to insist on their strict rights under the franchise laws based on these facts would be inequitable. See Clapp, 327 N.W.2d at 587 ("To hold that the legislature intended that franchisees have the absolute right to rescind a franchise agreement which violates the Minnesota Franchise Act could lead to harsh and unfair results where no actual fraud is present."). Given Plaintiffs' earlier conduct, they should not now be allowed to use the franchise laws as an escape hatch to undo a business decision they now regret. See id. at 586 (analogizing MFA to the Minnesota Blue Sky Law, which was not "meant to be used to protect the investor from all of his errors of business judgment no matter how unrelated to, or distant from, the sale of unregistered securities") (quoting Logan v. Panuska, 293 N.W.2d 359, 363 (Minn. 1980)).

Accordingly, Plaintiffs are equitably estopped from claiming Defendants violated the

registration and disclosure requirements of the Minnesota and Wisconsin franchise statutes, and summary judgment is granted to Defendants on Counts I and III.

**b. Misrepresentations under MFA and WFIL (Counts II and IV)**

Plaintiffs also allege Defendants violated the MFA and WFIL by falsely representing that sales from the Rochester U-Bake Store would be between $300,000-$400,000 the first year, the net profit for the operation would be 10%, that sales would increase by 10% each year, and that the start up costs for the business would be $132,970. Compl. ¶¶ 12, 15-16, 18, 81-88.

The Minnesota and Wisconsin franchise statutes include highly similar anti-fraud provisions. Both prohibit the offer or sale of a franchise "by means of any written or oral communication" that includes "an untrue statement of a material fact." See Minn. Stat. § 80C.13, subd. 2; Wis. Stat. § 553.41(3).

To prevail on a misrepresentation claim under the MFA, a plaintiff must prove it reasonably relied on the misrepresentation. See Teng Moua v. Jani-King of Minn., Inc., 810 F. Supp. 2d 882, 891 (D. Minn. 2011) (acknowledging difference of opinion on whether reasonable reliance required for MFA misrepresentation claim and concluding reasonable reliance a necessary element); see also Ellering v. Sellstate Realty Sys. Network, Inc., 801 F. Supp. 2d 834, 845 n.13 (D. Minn. 2011) (rejecting MFA claim where plaintiffs did not reasonably rely on alleged misrepresentations); but see Randall v. Lady of Am. Franchise Corp., 532 F. Supp. 2d 1071, 1086 (D. Minn. 2007) ("[T]he Court is not convinced that justifiable or reasonable reliance is an element of a claim for misrepresentation under the Minnesota Franchise Act."). Reliance is unreasonable as a matter of law where an oral representation is "plainly contradicted by the terms of [a] written contract." Crowell v. Campbell Soup Co., 264 F.3d 756, 762 (8th Cir.

2001); see also Ellering, 801 F. Supp. 2d at 844-45 (dismissing MFA claim premised on earnings representation where agreement expressly disclaimed such representations); Kieland v. Rocky Mountain Chocolate Factory, Inc., Civil No. 05-150, 2006 WL 2990336, at *8 (D. Minn. Oct. 18, 2006) (same).

To establish liability for a misrepresentation under the WFIL, a plaintiff must prove at least actual reliance:

> Any person who violates s. 553.41(3), (4) or (5) is liable for damages to any person who does not know or have cause to believe that the statement or representation was false or misleading and who, while relying upon the statement or representation, purchased a franchise . . . .

Wis. Stat. § 553.51(2) (emphasis added); see also Simos v. Embassy Suites, Inc., 983 F.2d 1404, 1410 (7th Cir. 1993) (stating "the enforcement provisions of the WFIL essentially write the element of detrimental reliance into the statute").

The alleged misrepresentations concerning start up costs and yearly sales increases do not satisfy the elements for a claim under the MFA or the WFIL because the undisputed evidence shows Plaintiffs did not actually or reasonably rely on those statements. The Business Plan prepared by Charles Baker projects start up costs of $205,000 rather than the $132,000 figure allegedly presented by Utecht. Charles Baker testified that he did not rely on the $132,000 figure:

> Q. So you were relying on the 205 number that you came up with, not the 132,000 number?
>
> A. At the—at this point, yes.

Charles Baker Dep. at 138:10-12. The Business Plan also projected a 30% increase from years one to two, and a 17% increase from years two to three, rather than the 10% yearly increases

allegedly represented by Utecht. Id. at 132:25–134:6. Charles Baker admits Plaintiffs relied on the figures in the Business Plan "to make a decision whether or not to go forward." Id. at 81:10-15. Thus, Plaintiffs cannot satisfy the element of actual reliance for the statements concerning start up costs and yearly sales increases. Furthermore, any reliance on Utecht's oral representations as to yearly sales would not have been reasonable because the representations are completely contradicted by the terms of the TLA. The TLA explicitly states "UTECHT has made NO claims about actual or potential earnings." TLA ¶ 11 (underlining in original). Finally, the alleged representation that Plaintiffs would achieve sales of $300,000 to $400,000 in the first year is not actionable because it was true: Plaintiffs admit first year sales were $415,000.

Thus, Plaintiffs cannot satisfy the elements of a misrepresentation claim under the MFA or the WFIL, and Defendants are granted summary judgment on Counts II and IV.

**2. Common Law Fraud and Negligent Misrepresentation (Counts VI and VII)**

Plaintiffs also assert claims for common law fraud and negligent misrepresentation based on Defendants' alleged representations concerning first year sales, yearly sales increases, and start up costs. Compl. ¶¶ 12, 15-16, 18, 81-95.

Under both Minnesota and Wisconsin common law, the elements of a fraud claim include a plaintiff's actual and reasonable reliance on a misrepresentation. See Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C., 736 N.W.2d 313, 320-21 (Minn. 2007) ("To prevail on a claim of fraudulent misrepresentation, the complaining party must set forth evidence demonstrating both actual and reasonable reliance."); Ritchie v. Clappier, 326 N.W.2d 131, 134 (Wis. Ct. App. 1982) (stating fraud elements are false representation made with intent to defraud and justifiable reliance by injured party on the misrepresentation). Actual and reasonable reliance are also required to

prove negligent misrepresentation under Minnesota and Wisconsin law. See Williams v. Smith, 820 N.W.2d 807, 815 (Minn. 2012) (listing justifiable reliance by plaintiff as an element of negligent misrepresentation); Schweiger v. Loewi & Co., Inc., 221 N.W.2d 882, 887 (Wis. 1974) (stating an element for negligent misrepresentation claim is "[t]he plaintiff must believe such representation to be true and rely thereon to his damage"); Amcore Bank v. Heus Mfg. LLC, No. 2011AP935, 2012 WL 385495, at *5 (Wis. Ct. App. Feb. 8, 2012) ("A representation upon which no reasonable reliance may be placed will not support a [negligent] misrepresentation action.").

As discussed above, Plaintiffs did not actually or reasonably rely on Defendants' alleged misrepresentations. Therefore, summary judgment is granted to Defendants on the claims for common law fraud and negligent misrepresentation alleged in Counts VI and VII.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment [Docket No. 11] is **GRANTED**; and
2. Plaintiffs' Motion for Summary Judgment [Docket No. 16] is **DENIED**.
3. All claims in the Complaint [Docket No. 1] are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 21, 2014.